UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LA MAINE RICE,

        Plaintiff,

v.

MICHAEL HENDERSON et al.,

        Defendants.

_____/

Case No. 1:23-cv-5

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Henderson, White, Beecher, and Kalis. The Court will also dismiss, for failure to state a claim, all claims against Defendants in their official capacities.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF Defendants in both their individual and official capacities: Registered Nurses Michael Henderson and

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Unknown Kalis; Corrections Officers Unknown White, Unknown Gaiter, and Unknown Clark; Corrections Officer/Resident Unit Manager L. Beecher; and Sergeant/Supervisor Unknown Leonard.

Plaintiff alleges that he injured his right hand in a physical altercation with another inmate on May 16, 2021. (Compl., ECF No. 1, PageID.5.) "After being detained for the fight," Plaintiff informed Defendant Gaiter that Plaintiff was experiencing pain in his hand. (*Id*.) Defendant Gaiter responded, "Okay I'll let medical know." (*Id*.) Plaintiff did not receive a reply. He then submitted a medical kite that same day. (*Id*., PageID.6.)[2]

On May 17 and 18, 2021, Plaintiff approached Defendants Gaiter, Clark, and Leonard and complained of severe pain in his right hand. (*Id*.) "Plaintiff's complaints went ignored." (*Id*.) When Plaintiff asked unidentified nurses for help, Plaintiff was told that he would be seen soon. (*Id*.)

On June 7, 2021, Plaintiff received an x-ray on his right hand. (*Id.*) While receiving medical care, Plaintiff told Defendant Leonard that his hand was broken. (*Id.*) Defendant Leonard responded, "I heard, maybe you should stop assaulting people." (*Id*.) "[D]uring the week of" July 1, 2021, Plaintiff asked Defendant Leonard if Defendant Leonard could contact health care so that Plaintiff could receive something for Plaintiff's right-hand pain, Defendant Leonard replied, "That's not my problem." (*Id*.)

The radiology report from Plaintiff's x-ray was ultimately completed by Defendant Henderson and made available to Plaintiff on July 11, 2021; however, plaintiff does not detail the

---

[2] In referencing Plaintiff's May 16, 2021 medical kite, Plaintiff's complaint indicates: "Refer to Exhibit A." (ECF No. 1, PageID.6.) Plaintiff goes on to ask the Court to "[r]efer to" several additional exhibits throughout the complaint. However, Plaintiff did not include any exhibits with his complaint, and therefore, the Court has not had the benefit of reviewing the items referenced.

results. (*Id*., PageID.7.) Plaintiff alleges that, at some unspecified point in time, unidentified medical staff "confirmed [Plaintiff's hand] to be broken and fractured." (*Id.*, PageID.9.)

On July 14, 2021, non-party Nurse Silvernail informed Plaintiff that Defendant Henderson had issued Plaintiff a medical accommodation for a hand brace and ace bandage. (*Id*., PageID.7.) When Plaintiff did not receive the brace and bandage that day, Plaintiff filed a grievance "explain[in]g how the DRF medical staff and officers knew that his hand was broken for over two months and did nothing for him." (*Id.*) Defendant Beecher rejected Plaintiff's grievance as untimely. (*Id*., PageID.8.)

Also on July 14, 2021, Defendant White informed Plaintiff that Defendant Leonard had told Defendants White and Clark to "ignore Plaintiff's complaints, if he wants to fight, he has to deal with the consequences." (*Id*. (internal quotation marks omitted).)

Plaintiff seeks injunctive relief, compensatory damages against all Defendants, and punitive damages against Defendants White, Gaitor, Leonard, Clark, Kalis, and Henderson. (*Id.*, PageID.11.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff claims that Defendants Henderson, White, Kalis, Clark, Gaiter, and Leonard were deliberately indifferent to Plaintiff's serious medical needs, in violation of Plaintiff's Eighth Amendment rights. (ECF No. 1, PageID.9–10.) Plaintiff also alleges that Defendant Beecher "wrongfully rejected Plaintiff's grievance on July 29, 2021, for being untimely." (*Id.*, PageID.8.)

### A.     Eighth Amendment - Denial of Medical Care

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.

6

2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of

7

causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842).

### 1. Objective Component - Serious Medical Need

With respect to the objective component of the Eighth Amendment test, Plaintiff contends that he experienced severe pain because of his right-hand injury, and that his hand was later "confirmed to be broken and fractured" by DRF medical staff. (ECF No. 1, PageID.9.) The Court does not have the benefit of the radiology report referenced with the complaint; however, taking Plaintiff's allegations as true, the Court assumes, without deciding, that Plaintiff's painful and broken right hand represents an objectively serious medical need. The Court will therefore address the subjective component of the Eighth Amendment test according to Plaintiff's allegations against Defendants Henderson, White, Kalis, Clark, Gaiter, and Leonard.[3]

### 2. Subjective Component - Deliberate Indifference

#### a. Defendant Henderson

Plaintiff's complaint contains two allegations against Defendant Henderson. First, Plaintiff alleges that Defendant Henderson issued a radiology report following an x-ray of Plaintiff's right hand. (ECF No. 1, PageID.7.) Second, Plaintiff indicates that he was told that Defendant

---

[3] Plaintiff does not allege that Defendant Beecher was deliberately indifferent to Plaintiff's serious medical need or otherwise violated Plaintiff's Eighth Amendment rights. He instead alleges that Defendant Beecher wrongfully denied Plaintiff's July 14, 2021 grievance, which will be discussed separately, below.

8

Henderson had issued an order for Plaintiff to receive a medical accommodation for a hand brace and ace bandage. (*Id.*) Although Plaintiff claims that he did not receive the brace and bandage that day, Plaintiff also does not allege that Defendant Henderson played any role in that delay or in the provision of medical supplies generally. (*Id.*)

Plaintiff's allegations, taken as true, simply do not indicate any deliberate indifference on the part of Defendant Henderson. Plaintiff does not include any facts that would plausibly suggest that Defendant Henderson erred in his treatment of Plaintiff's injured hand. Moreover, even if Plaintiff had done so, "[a medical provider's] errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference." *Rhinehart*, 894 F.3d at 738–39 (citing *Estelle*, 429 U.S. at 107–08). Likewise, a medical provider is not liable under the Eighth Amendment if the medical provider provides reasonable treatment, even if Plaintiff disagrees with that course of treatment or even if the course of treatment ultimately proves harmful. *Id*. Plaintiff is required to plead facts that would plausibly suggest that Defendant Henderson "'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Id*. (quoting *Comstock*, 273 F.3d at 703). Plaintiff has not met that burden. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Henderson.

b.     **Defendants Kalis and White**

Plaintiff alleges that Defendant Kalis was "the requesting provider" for the radiology report that Plaintiff received during the week of July 11, 2021. (ECF No. 1, PageID.7) As to Defendant White, Plaintiff alleges that on July 14, 2021, he was speaking with Defendant White, when Defendant White informed Plaintiff that Defendant Leonard had told Defendants White and Clark to "ignore Plaintiff's complaints, if he wants to fight, he has to deal with the consequences." (*Id*. (internal quotation marks omitted).). Plaintiff states in a conclusory fashion that Defendant Kalis

9

was deliberately indifferent to Plaintiff's serious medical needs, while Defendant White "ignore[d] the plaintiff or procrastinated in reaching a decision to deny Plaintiff any assistance." (*Id.*, PageID.10.) However, Plaintiff's complaint does not contain any *factual* allegations that would support Plaintiff's conclusory legal claims against Defendants White and Kalis.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citation omitted) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

In this action, Plaintiff sole factual allegation against Defendant Kalis is that Defendant Kalis was "the requesting provider" for the radiology report that set forth the results of Plaintiff's

x-ray. (ECF No. 1, PageID.7) This allegation, taken as true, does not indicate any deliberate indifference on the part of Defendant Kalis.

As to Defendant White, Plaintiff alleges that Defendant Leonard told Defendant White to ignore Plaintiff's complaints of hand pain (ECF No. 1, PageID.8); however, there is no allegation that Plaintiff requested assistance from Defendant White, that Defendant White followed Defendant Leonard's instruction, or that Defendant White otherwise personally contributed to any alleged violation of Plaintiff's Eighth Amendment rights.

Because Plaintiff fails to allege facts to suggest that Defendants Kalis and White were deliberately indifferent to his serious medical need, Plaintiff fails to state an Eighth Amendment claim against these Defendants. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claims against these Defendants.

### c.     Defendants Gaiter, Clark and Leonard

Plaintiff claims that, "[a]fter being detained for the fight," Plaintiff informed Defendant Gaiter of the pain in Plaintiff's right hand. (ECF No. 1, PageID.5.) Defendant Gaiter told Plaintiff: "Okay, I'll let medical know." (*Id.*) However, Plaintiff did not receive treatment. In the two days following Plaintiff's injury, Plaintiff again spoke with Defendant Gaiter, as well as Defendants Clark and Leonard, about "severe pain" in Plaintiff's right hand, and Plaintiff "suggested that [his hand] may be broken." (*Id.*, PageID.6.) Plaintiff alleges that "Plaintiff's complaints went ignored" (*id.*), and officers "did nothing for him" (*id.*, PageID.7). Plaintiff further claims that Defendant Leonard dismissed Plaintiff's requests for assistance, responding that it was "not [his] problem" (*id.*) and that Plaintiff later heard that Defendant Leonard had told Defendants Clark and White to ignore Plaintiff's complaints of pain (*id.*, PageID.8). Construed liberally, Plaintiff's Eighth Amendment claims against Defendants Gaiter, Clark, and Leonard cannot be dismissed on screening.

11

### B.     Fourteenth Amendment - Denial of Grievance

Plaintiff alleges that, after receiving medical treatment in the form of an x-ray and order for a brace and ace bandage nearly two months after Plaintiff sustained his hand injury, Plaintiff filed a grievance, complaining of how medical staff and officers previously "knew that [Plaintiff's] hand was broken for over two months and did nothing for him." (ECF No. 1, PageID.7.) Defendant Beecher reviewed that grievance and, according to Plaintiff, wrongfully denied it as untimely. (*Id.*, PageID.8.) The Court liberally construes Plaintiff's complaint as seeking to raise a Fourteenth Amendment claim against Defendant Beecher for deprivation of due process.[4]

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or

---

[4] Plaintiff contends in a conclusory fashion that "[d]ue to [Defendant Beecher's rejection of Plaintiff's grievance] Plaintiff's issue concerning his hand went unaddressed for 2 (refer to Exhibit F) months." (ECF No. 1, PageID.8.) This conclusion is not supported by the factual allegations of Plaintiff's complaint where Plaintiff contends that the grievance was filed only *after* the "2 month[]" delay in treatment. (*Id.*, PageID7.) However, to the extent that Plaintiff's conclusory allegation can be viewed as an attempt to raise an Eighth Amendment claim against Defendant Beecher, Plaintiff's claim would fail. There are no factual allegations to suggest plausibly that Defendant Beecher was deliberately indifferent to Plaintiff's medical need in denying Plaintiff's grievance as untimely or that his denial of Plaintiff's grievance caused any further delay in medical treatment, particularly where Plaintiff was already under the care of medical staff at the time that the grievance was filed. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that a custody officer was entitled to rely on the medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials).

property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Beecher's denial of Plaintiff's grievance did not deprive Plaintiff of due process in violation of the Fourteenth Amendment.

    **C.**    **Official Capacity Claims**

In naming the parties, Plaintiff indicates that "[e]ach Defendant is sued in their individual and official capacity at all times mentioned in this complaint." (ECF No. 1, PageID.3.) However, he later goes on to allege: "all Defendants are being sued in their individual personal capacity and not in their capacity as officer of the M.D.O.C." (*Id.*, PageID.9.) Given the lack of clarity, the

13

Court liberally construes Plaintiff's complaint as attempting to raise "official capacity claims," which the Court will dismiss for failure to state a claim.

Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)). An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Accordingly, claims against each Defendant employed by the MDOC are treated as claims against the MDOC itself.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Sovereign immunity extends not only to the State itself, but also to "state instrumentalities," which include the MDOC. *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010) (citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Turnboe v. Stegall*, 234 F.3d 1270 (6th Cir. 2000)). In numerous opinions, the Sixth Circuit has specifically

14

held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy*, 369 F. App'x at 653–54. For these reasons, Plaintiff fails to state a claim against the MDOC for money damages.

In addition to seeking compensatory and punitive damages, Plaintiff also seeks injunctive relief against the MDOC. (ECF No. 1, PageID.11). While, the Supreme Court has recognized that a request for injunctive relief constitutes an exception to sovereign immunity, not treated as an action against the state, *see Ex parte Young*, 209 U.S. 123, 159–60 (1908), such a claim is not available here.

"*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). The Sixth Circuit has held that transfer to another prison facility moots a prisoner's claim for injunctive and declaratory relief. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Where, as here, the prisoner has been transferred away from the defendants and their offending conduct, it can no longer be said that the violation is "ongoing" or that any relief is "prospective" as applied to Plaintiff. The Court will therefore dismiss any official capacity claims for injunctive relief as well.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Henderson, White, Beecher, and Kalis will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, all claims against Defendants in their official capacities. Plaintiff's Eighth Amendment claims against Defendants Gaiter, Clark, and Leonard in

15

their individual capacities for deliberate indifference to Plaintiff's serious medical need remain in the case.

An order consistent with this opinion will be entered.

Dated:  January 23, 2023                              /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     U.S. Magistrate Judge